# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DELOMA D. GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-148-FHS |
| | ) | |
| METWEST, INC., d/b/a QUEST | ) | |
| DIAGNOSTICS INC., a/k/a | ) | |
| DIAGNOSTIC LABORATORY | ) | |
| OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT METWEST, INC., d/b/a QUEST DIAGNOSTICS INC., a/k/a DIAGNOSTIC LABORATORY OF OKLAHOMA'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Nathan L. Whatley, OBA #14701
Kristin M. Simpsen, OBA #22302
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
nathan.whatley@mcafeetaft.com
kristin.simpsen@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

November 30, 2015

## TABLE OF CONTENTS

Page

**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT** .................. 1

**BRIEF IN SUPPORT** ................................................................................... 1

**I.  SUMMARY OF THE CASE** ........................................................... 1

**II.  STANDARD OF REVIEW** .............................................................. 4

**III. STATEMENT OF UNDISPUTED FACT** ........................................ 5

**IV. ARGUMENTS AND AUTHORITIES** ........................................... 12

**A.  Plaintiff's Disparate Treatment Claim Based on Race Fails as a Matter of Law.** ............................................................... 12

    1.  Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination. ........................................................ 12

    2)  Plaintiff Cannot Show Any Evidence That DLO's Decision to End the Employment Relationship Due to Plaintiff's Altercation with a Co-Worker Was a Pretext for Race Discrimination. ...................... 16

**B.  Plaintiff's ADEA Claim Fails as a Matter of Law.** ...................... 19

    1)  Plaintiff's modicum of "evidence" does not establish a triable issue of age as the "but-for" cause of her termination. ............................ 19

    2)  Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA. ............................................... 21

    3)  Plaintiff has no evidence of pretext. ........................................ 22

**C.  Plaintiff Failed to Reasonably Mitigate Her Damages.** ............... 23

**CONCLUSION** ........................................................................................ 24

**CERTIFICATE OF SERVICE** .................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

Adler v. Wal-Mart Stores, Inc.,
   144 F.3d 664 (10th Cir. 1998) ....................................................................................................4

Anaeme v. Diagnostek, Inc.,
   164 F.3d 1275 (10th Cir. Cert denied, 528 U.S. 814 (1999)) ...................................................16

Anderson v. Coors Brewing,
   181 F.3d 1171 (10th Cir. 1999) ................................................................................................17

Anderson v. Graybar Elec. Co., Inc.,
   CIV.09-251, 2010 WL 2545508 (D. Minn. June 18, 2010).......................................................25

Aramburu v. Boeing Co.,
   112 F.3d 1398 (10th Cir. 1997) ..........................................................................................14, 24

Bacchus Indus. Inc. v. Arvin Indus., Inc.,
   939 F.2d 887 (10th Cir. 1991) ...................................................................................................4

Branson v. Price River Coal Co.,
   853 F.2d 768 (10th Cir. 1988) .................................................................................................18

Bullington v. United Airlines, Inc.,
   186 F.3d 1301 (10th Cir. 1999) ..........................................................................................12, 24

Cagler v. Lockheed Martin Corp.,
   1998 WL 637363, No. Civ. A-97-2953 (E.D. La. Sept. 16, 1998).........................................19

Cone v. Longmont United Hosp. Ass'n.,
   14 F.3d 526 (10th Cir. 1994) .............................................................................................17, 18

Dieck v. Suffolk County Vanderbilt Museum,
   2011 WL 4434066, Case No. 09-CV-2263 (E.D.N.Y., Sept. 22, 2011)..................................24

E.E.O.C. v. Sandia Corp.,
   639 F.2d 600 (10th Cir. 1980) .................................................................................................25

EEOC v. PVNF, L.L.C.,
   487 F.3d 790 (10th Cir. 2007) .................................................................................................17

Elrod v. Sears, Roebuck & Co.,
   939 F.2d 1466 (11th Cir.1991) ................................................................................................23

Grady v. Affiliated Central, Inc.,
   130 F.3d 553 (2d Cir. 1997)....................................................................................................23

ii

Green v. New Mexico,
    420 F.3d 1189 (10th Cir. 2005) ...........................................................15

Gross v. FBL Fin. Servs., Inc.,
    557 U.S. 167, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009)............................................19, 20, 22

Hartley v. Dillard's, Inc.,
    310 F.3d 1054 (8th Cir. 2002) ...........................................................25

Hartley v. Wis. Bell, Inc.,
    124 F.3d 887 (7th Cir. 1997) ...........................................................18

Hiatt v. Rockwell Int'l Corp.,
    26 F.3d 761 (7th Cir.1994) ...........................................................16

Igwe v. Saint Anthony's Hosp.,
    804 F.Supp.2d 1183 (W.D. Okla. 2011) ...........................................................14

Johnson v. AT & T Corp.,
    422 F.3d 756, 762-763 (8th Cir. 2005) ...........................................................18

Jones v. Okla. City Pub. Schs.,
    617 F.3d 1273 (10th Cir. 2010) ...........................................................22

Kendrick v. Penske Transp. Serv., Inc.
    220 F.3d 1220 (10th Cir. 2000) ...........................................................14, 15, 17

Matiera v. JP Morgan Chase Corp.,
    740 F.Supp. 2d 561 (S.D.N.Y. 2010)...........................................................24

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...........................................................4

McDonnell-Douglas Corp. v. Green,
    411 U.S. 792 (1973)...........................................................12, 22

McGowan v. City of Eufala,
    472 F.3d 736 (10th Cir. 2006) ...........................................................14

Medlock v. United Parcel Serv., Inc.,
    608 F.3d 1185 (10th Cir. 2010) ...........................................................20

Munoz v. St. Mary-Corwin Hosp.,
    221 F.3d 1160 (10th Cir. 2000) ...........................................................17

Prizevoits v. Ind. Bell Tel. Co.,
    882 F.Supp. 787 (S.D. Ind. 1995) ...........................................................17

Rivera v. City and County of Denver,
   365 F.3d 912 (10th Cir. 2004) ................................................................................16, 18, 22

Sabin v. Amrep Inc.,
   No. CIVA06CV02016-EWNMEH, 2007 WL 4459149 (D. Colo. Dec. 14,
   2007) ........................................................................................................................23

Sanchez v. Mora–San Miguel Electric Co-op. Inc.,
   173 F.3d 864, 1999 WL 176151 (10th Cir.1999) ....................................................25

Sanders v. Sw. Bell Tel., L.P.,
   544 F.3d 1101 (10th Cir. 2008) ...............................................................................22

Schrieber v. Fed. Express Corp.,
   698 F. Supp. 2d 1266 (N.D. Okla. 2010) .................................................................23

Self v. Crum,
   439 F.3d 1227 (10th Cir. 2006) ...............................................................................24

Sepulvada v. Baker Hughes Oilfield Op., Inc.,
   No. CIV-04699, 2005 WL 1875092 (W.D. Okla. Aug. 5, 2005) ............................14

Swackhammer v. Sprint/United Mgmt. Co.,
   493 F.3d 1160 (10th Cir. 2007) ...............................................................................18

White v. Oklahoma,
   552 Fed. Appx. 840 (10th Cir. 2014).................................................................13, 17

**Statutes**

42 U.S.C. § 1981.................................................................................................1,12,16,19

ADEA ........................................................................................................... *passim*

Title VII of the Civil Rights Act ..................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(c) ..................................................................................................4

Rule 56 of the Federal Rules of Civil Procedure .........................................................1

**DEFENDANT METWEST, INC., d/b/a QUEST DIAGNOSTICS, INC., a/k/a
DIAGNOSTIC LABORATORY OF OKLAHOMA'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Plaintiff, Deloma D. Gay ("Plaintiff"), brings a Title VII and Section 1981 race discrimination claim and an ADEA age discrimination claim against Defendant Metwest, Inc., d/b/a Quest Diagnostics, Inc. a/k/a Diagnostic Laboratory of Oklahoma ("DLO") but none of these claims withstands analysis because Plaintiff has absolutely no evidence of any discriminatory conduct.  Therefore, pursuant to Rule 56 of the Federal Rules of Civil Procedure, DLO respectfully moves this Court for summary judgment in its favor on the race and age discrimination claims asserted in the present action.[1]

DLO submits the following brief in support of its Motion.

**BRIEF IN SUPPORT**

## I.    SUMMARY OF THE CASE

Plaintiff brings the present action against DLO alleging race discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

Plaintiff was employed by DLO as a Phlebotomy Services Representative in DLO's Ardmore Patient Services Center ("Ardmore PSC"), where patients go to have their blood drawn for diagnostic testing.   On May 28, 2014, Plaintiff was working in the Ardmore PSC.  Against DLO Policy and without informing or seeking consent from her supervisors, Plaintiff brought her four-year old grandson to the Ardmore PSC and placed him in the break room while she was working.  A co-worker, Wyshaunda Purvey, came into the Ardmore PSC to clock out of work

and said hello to Plaintiff's grandson, with whom she was previously acquainted. Plaintiff's grandson told Ms. Purvey that the Plaintiff had instructed him not to talk to Ms. Purvey and that he would get in trouble if he talked with her. When Ms. Purvey questioned Plaintiff about this, the two women proceeded to have a loud disagreement concerning a pre-existing conflict between Plaintiff's daughter and Ms. Purvey's family. During this confrontation, tempers flared and a loud verbal confrontation transpired. Plaintiff's grandchild also became frightened and was screaming. A patient witnessing the altercation believed that Ms. Purvey had hit the Plaintiff. Accordingly, the patient called the police. Once the police arrived, they talked to both parties. No charges were filed. Of note, there were no DLO managers or supervisors present during the altercation.

After the altercation, Ms. Purvey reached out to Gayla Anson, Supervisor for the Southern Part of Oklahoma and Plaintiff reached out to Phlebotomy Group Lead Kory Claxton. After consulting with Jim McKissick, Chief People Officer, Ms. Anson requested Ms. Purvey and Plaintiff to provide written statements concerning their version of the events.

Upon reviewing the handwritten statements, Mr. McKissick determined that both Plaintiff and Ms. Purvey had behaved inappropriately. As a result, Mr. McKissick terminated both Plaintiff and Ms. Purvey (who was under the age of 40) for their involvement in an altercation in the presence of DLO customers that led to police being called on the scene—which altercation was precipitated by Plaintiff's decision to bring her four-year old grandson to the work place and to instruct him not to speak to Ms. Purvey. An altercation between employees regarding personal matters in the presence of patients is inappropriate and embarrassing to DLO,

---

[1] Plaintiff also asserted a claim for unpaid wages allegedly due and owing for a March 2014 bonus payment. In her deposition, Plaintiff testified that after reviewing the documents, she did in fact receive the incentive pay or bonus pay that would have been paid in March 2014. (Ex. 1,

particularly when the altercation causes a minor child who is present at a PSC in violation of DLO policy to scream in distress as a result of the altercation.   This is a legitimate business reason unrelated to Plaintiff's race or age.   As the Undisputed Facts will establish, Plaintiff's claims are not supported by any evidence of discriminatory animus.   Plaintiff has no evidence of discriminatory comments or animosity based on race or age.   Rather, Plaintiff's conclusion that DLO's treatment of her was motivated by her race and age is based solely on her feelings and is nothing more than sheer speculation.   Having no evidence of racial or age animus, her claims fall *well* short of the applicable legal standards, and each of Plaintiff's Title VII and ADEA claims fails as a matter of law.

Should the Court determine that Plaintiff's Title VII and/or ADEA claim survives summary judgment, DLO requests that the Court grant DLO judgment on the item of damages. Since Plaintiff's employment with DLO ended on June 2, 2014, Plaintiff was only out of work for approximately two weeks.   After obtaining new employment June 17, 2014 at a lesser rate of pay, Plaintiff has failed to look for any additional work.   Plaintiff's failure to look for higher paying work after becoming re-employed is, as a matter of law, an insufficient effort by Plaintiff to reasonably mitigate her damages.   Accordingly, DLO is entitled to summary judgment on the issue of Plaintiff's economic damages under Title VII and the ADEA.

Based on the undisputed facts presented below, DLO requests that this Court enter summary judgment against Plaintiff on each of her race and age discrimination claims against DLO.

---

Deposition of Deloma Gay ("Plaintiff Dep.") 71:1-13.)   The parties have agreed to a stipulated dismissal with prejudice of Plaintiff's wage claim.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no <u>genuine</u> issue as to any <u>material</u> fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emp. added).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998) (internal citations omitted).

Where, as here, a party seeking summary judgment will not bear the ultimate burden of persuasion at trial, it "need not negate the nonmovant's claim" in its motion.  <u>Id.</u> at 671. Rather, in moving for summary disposition, DLO may satisfy its obligations "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  <u>Id.</u> <u>citing</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  After such a showing, the nonmoving party must "set forth specific facts" by reference to admissible evidence from which a rational trier of fact could find in its favor.  <u>Adler</u>, 144 F.3d at 671.  To accomplish this, the nonmovant's "facts" must be identified "by reference to affidavits, deposition transcripts, or specific exhibits."  <u>Id.</u>

To avoid summary judgment, a plaintiff must do far "more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, she "must present sufficient evidence in specific, factual form for a jury to return a verdict in her favor."  <u>Bacchus Indus. Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).

4

III.    **STATEMENT OF UNDISPUTED FACT**

1.      Plaintiff was employed by DLO as a Phlebotomy Services Representative at the Ardmore Patient Services Center.  (Ex. 1, Plaintiff Dep. at 33:11-25.)

2.      Plaintiff's immediate supervisor was Gayla Anson. (Ex. 1, Plaintiff Dep. at 36:15-18.)  Ms. Anson's office was in Ada, and she came to the Ardmore Patient Services Center less than one time per month.  (Ex. 1, Plaintiff Dep. 37:18-24.)

3.      Under Gayla Anson's supervision was group lead phlebotomist, Kory Claxton. (Ex. 1, Plaintiff Dep. at 38:2-8.)  Mr. Claxton was based out of Durant and came to the Ardmore Patient Services Center only when needed for coverage or educational classes.   (Ex. 1, Plaintiff Dep. at 38:11-18.)   As a group lead, Mr. Claxton had additional responsibilities above and beyond those of a regular phlebotomist.  (Ex. 2, Deposition of Kory Claxton ("Claxton Dep.") 10:1-13; 10:20-11:7.)

4.      Plaintiff is currently 56 years old.  (Ex. 1, Plaintiff Dep. at 5:20-22.)  Gayla Anson is currently 61 years old.  (Ex. 3, Deposition of Gayla Anson ("Anson Dep.") at 6:13-14.)  Jim McKissick is currently 69 years old.  (Ex. 4, Declaration of James L. McKissick ("McKissick Decl.") at ¶ 2.)

5.      DLO has a policy regarding children and family at the worksite.   (Ex. 5, Children/Family On-Site Policy.)   It is against DLO company policy to have children in the workplace - particularly when they are unaccompanied and unsupervised.  (Ex. 4, McKissick Decl. at ¶ 11.) This policy provides:

> Family members, especially children, are only allowed to enter Quest Diagnostics' facilities if they are signed in and escorted at all times (child is defined as anyone under the age of 18).  They should remain in common areas of the building, i.e. the front lobby, or may take brief visits to the cafeteria, conference rooms, or administrative departments.   Family members, especially

children, are prohibited at all times from visiting phlebotomists at their work sites.

At laboratory facilities, children are not allowed in lab testing or biohazard areas, logistics, warehouse, shop or construction areas. Children may not be left alone on the premises at any time even in common areas such as break rooms, cafeterias, and conference rooms. Children should not remain on the premises during the employee's work hours, including nights and weekends.

(Ex. 5, Children/Family On-Site Policy)

6.      DLO expects its employees to behave in a professional and respectful manner towards each other. (Ex. 4, McKissick Decl. at ¶ 12.) This is reflected in the 2014 Phlebotomy Expectations for Success, which provide:

Team members will treat each other with respect and consideration. Conversations between team members are to remain on a professional level at all times. No discussions concerning patient problems or personal problems will take place in an area where the patient may hear the conversation. If problems or issues arise between employees, discussions to solve the issue will take place in the break room, an area where the patients cannot hear the discussion, or a supervisor's office.

(Ex. 6, 2014 Phlebotomy Expectations for Success.)

7.      On May 29, 2014, Plaintiff's grandson was brought to the Ardmore Patient Services Center. Plaintiff's grandson was left behind a closed door in the break room where Plaintiff could not see him. (Ex. 1, Plaintiff Dep. 48:10-49:4-17; 53:25-54:2)

8.      In the afternoon of Thursday, May 29, 2014, Troy Hitzeman came into Mr. McKissick's office to alert Mr. McKissick to a situation that had occurred that day at the Ardmore PSC. (Ex. 4, McKissick Decl. at ¶ 3.) Mr. Hitzeman told Mr. McKissick that two employees were involved in an altercation and the police were called. (Ex. 4, McKissick Decl. at ¶ 3.) Mr. Hitzeman also told Mr. McKissick that one of the employees had a minor child present at the Ardmore PSC at the time of the altercation. (Ex. 4, McKissick Decl. at ¶ 3.) At the time

of the altercation, there were not any DLO management employees present. (Ex. 4, McKissick Decl. at ¶ 3.)

9.      Shortly thereafter, Mr. Hitzeman and Mr. McKissick called Gayla Anson.  (Ex. 4, McKissick Decl. at ¶ 4.)  Ms. Anson told Mr. Hitzeman and Mr. McKissick that her preliminary investigation of the incident at the Ardmore PSC indicated that there was an issue with a minor family member of an employee and that two employees were yelling at one another in the presence of a patient.[2]   (Ex. 4, McKissick Decl. at ¶ 4.)  Ms. Anson indicated that the police had been called.  (Ex. 4, McKissick Decl. at ¶ 4.)

10.      Mr. McKissick instructed Ms. Anson to obtain written statements from the two employees, Deloma Gay and Wyshaunda Purvey. (Ex. 4, McKissick Decl. at ¶ 5.)    Mr. McKissick also instructed Ms. Anson to keep Plaintiff and Ms. Purvey off work until Mr. McKissick determined what course of conduct should be followed.  (Ex. 4, McKissick Decl. at ¶ 5.)   Mr. McKissick determined that he would make no decisions regarding discipline until after he had reviewed the employees' written statements.  (Ex. 4, McKissick Decl. at ¶ 5.)

11.      Mr. Claxton called Plaintiff back and advised her to finish up her shift that day and to not come to work on Friday.  (Ex. 1, Plaintiff Dep. 61:21-62:4.)  Mr. Claxton also asked Plaintiff to provide a written statement about the altercation.  (Ex. 1, Plaintiff Dep. 63:4-9.)

12.      Plaintiff faxed Mr. Claxton a handwritten statement that she wrote about the incident with Ms. Purvey.  (Ex. 1, Plaintiff Dep. 63:9-64:10; Ex. 7, Handwritten statement of Deloma Gay dated 5/29/17)  Plaintiff also faxed Mr. Claxton a handwritten statement from the

patient who witnessed the incident.   (Ex. 1, Plaintiff Dep. 64:15-65:2; Ex. 8, Handwritten statement of Phyllis Reece.)

13.     Ms. Purvey also provided Mr. Claxton with a handwritten statement about the incident with Plaintiff.   (Ex. 2, Claxton Dep. 81:2-11; Ex. 9, Handwritten statement of Wyshaunda Purvey.)  Mr. Claxton then provided the written statements to Ms. Anson.  (Ex. 2, Claxton Dep. 81:2-11.)

14.     In the afternoon on Friday, May 30, 2014, Mr. Hitzeman forwarded Mr. McKissick three handwritten statements – one from Plaintiff (Ex. 7, Handwritten statement of Deloma Gay dated 5/29/17), one from Ms. Purvey (Ex. 9, Handwritten statement of Wyshaunda Purvey), and one from a patient who had witnessed the altercation (Ex. 8, Handwritten statement of Phyllis Reece.)  (Ex. 4, McKissick Decl. at ¶ 6.)

15.     Jim McKissick reviewed the handwritten statements.  (Ex. 4, McKissick Decl. at ¶ 7.)  From reviewing the handwritten statements, Mr. McKissick understood that Plaintiff's grandchild was present at the Ardmore PSC the previous afternoon and that Plaintiff had instructed her grandchild to not speak with Ms. Purvey.  Ex. 4, McKissick Decl. at ¶ 7.)  The handwritten statements indicated that the altercation was over a familial dispute.   Ex. 4, McKissick Decl. at ¶ 7.)  The handwritten statements further indicated that Plaintiff accused Ms. Purvey of yelling at her and Ms. Purvey accused Plaintiff of yelling at her.  Ex. 4, McKissick Decl. at ¶ 7.)  The patient's statement indicated that Ms. Purvey and Plaintiff were arguing and the small child was screaming. Ex. 4, McKissick Decl. at ¶ 7.)

---

[2] Plaintiff denies that she raised her voice during the altercation (Ex. 1, Plaintiff Dep. 56:18-20); however, whether Plaintiff did or did not raise her voice is immaterial.  What matters is the decision maker's understanding of the facts as they were presented to him.   The record demonstrates that Mr. McKissick fully investigated the incident and came to the reasonable, supported conclusion that both Plaintiff and Ms. Purvey were involved in the altercation, which

16.     After reviewing the statements, later in the afternoon of May 30, 2014, Mr. McKissick participated in a conference call with Mr. Hitzeman and Ms. Anson concerning the altercation between Plaintiff and Ms. Purvey.  (Ex. 4, McKissick Decl. at ¶ 8.)  Ms. Anson informed Mr. McKissick about the conversation she had with the Ardmore Police who had responded to the call on May 28, 2014. (Ex. 4, McKissick Decl. at ¶ 8.)

17.     Based on Mr. McKissick's review of the handwritten statements and the information he received from Ms. Anson during the conference call, Mr. McKissick made the final decision to terminate both Plaintiff and Ms. Purvey for their involvement in the altercation which was precipitated by Plaintiff's decision to bring her grandchild to work without seeking permission or giving notice to her supervisors and instructing the grandchild to not speak with Ms. Purvey.  (Ex. 4, McKissick Decl. at ¶ 10.)

18.     An altercation between employees regarding personal matters in the presence of patients is inappropriate and embarrassing to DLO, particularly when the altercation causes a minor child who is present at a PSC in violation of DLO policy to scream in distress as a result of the altercation.  (Ex. 4, McKissick Decl. at ¶ 12.)

19.     On Monday, June 2, 2014, Mr. Claxton called Plaintiff and asked her to come to the Ardmore PSC because Ms. Anson would like to see her.  (Ex. 1, Plaintiff Dep. 65:25-66:8.)

20.     When Plaintiff came back to the PSC, she met with Mr. Hitzeman and Ms. Anson.  (Ex. 1, Plaintiff Dep. 66:13-20.)  Plaintiff testified that "they went over what happened and told me that because of it they would have to let [her] go."  (Ex. 1, Plaintiff Dep. 67:10-12.)  Plaintiff did not say anything during the meeting, thanked them, and then left.  (Ex. 1, Plaintiff Dep. 67:18-19.)

---

was precipitated by Plaintiff's decision to bring her four-year old grandson to work and to instruct him not to speak to Ms. Purvey.

21.     Ms. Purvey was also terminated for the May 28, 2014 incident.  (Ex. 1, Plaintiff Dep. 80:5-10; Ex. 4, McKissick Decl. at ¶ 10.)  Ms. Purvey was under the age of 40 when she was terminated.  (Ex. 1, Plaintiff Dep. 80:5-10; Ex. 4, McKissick Decl. at ¶ 10.)

22.     Plaintiff admits that some level of discipline was appropriate for the May 28, 2014 incident, but disagrees that termination was the appropriate course of action.  (Ex. 1, Plaintiff Dep. 73:12-22.)

23.     Plaintiff testified:

Q.      And your testimony is that you didn't participate in it but other information they had was that you did.  Do you understand that?

A.      Yes, I understand that.

Q.      So they had to make a decision based upon all the evidence.  Right?

A.      Yes.

Q.      But you think they should have decided on a lesser punishment for you?

A.      For me anyway because honestly I didn't do anything wrong.  I feel like I have been discriminated against because of that.

(Ex. 1, Plaintiff Dep. 73:23-74:9.)

24.     Plaintiff testified:

Q.      But you understand, this was a pretty big deal to have a blowup where employees were having a confrontation that caused the police to be called. Right?

A.      I understand that, yes, sir.

Q.      And if they believed from the totality of it that either you were participating in it or you had done things such as bringing your grandson in that caused it to happen, that would give them a reasonable basis to take some action, wouldn't it?

…

A.      It would have been.

(Ex. 1, Plaintiff Dep. 78:2-15.)

10

25.     Plaintiff testified that other than DLO hiring a younger, white employee to replace her[3], the other reason she believed she was discriminated against on the basis of her race and age was that after she was terminated, DLO redecorated and painted the Ardmore PSC.  (Ex. 1, Plaintiff Dep. 83:13-84:10.)  Plaintiff testified there were no other reasons why she felt that she was discriminated against on the basis of her age and race.  (Ex. 1, Plaintiff Dep. 83:13-84:1.)

26.     Plaintiff testified:

Q.      Now, the same thing in terms of why you think your age played some role in their decision.  What makes you think that it was based on your age?

A.      I just feel that they did because I am older and they needed someone I guess newer in there, younger.

Q.      Why do you guess that they needed someone newer or younger?

A.      I can't answer that right now.

Q.      Anything else that makes you think your age in some way motivated the decision to terminate you?

A.      I just know that they did.  I don't know.

(Ex. 1, Plaintiff Dep. 86:11-22.)

27.     Plaintiff testified that no one in management ever said anything that Plaintiff thought was racist.  (Ex. 1, Plaintiff Dep. 86:23-87:14.)

28.     Plaintiff testified that no one at DLO ever said anything about her age while she was employed by DLO.  (Ex. 1, Plaintiff Dep. 88:6-8.)

29.     Plaintiff further testified that she never made an internal complaint of race or age.  (Ex. 1, Plaintiff Dep. 88:9-13.)

30.     There are no other circumstances where the police were called to a DLO location due to the behavior of an employee.  (Ex. 4, McKissick Decl. ¶ 13.)

---

[3] DLO moved a current employee, Christina Tolbert, to the Ardmore PSC to assume Plaintiff's job duties.  (Ex. 4, McKissick Decl. at ¶ 14.)  Ms. Tolbert is Caucasian and was 40 years old at the time she assumed Plaintiff's job duties.  (Ex. 4, McKissick Decl. at ¶ 14.)

31.     Plaintiff started a new job with Advanced Laboratory Services on June 17, 2014. (Ex. 1, Plaintiff Dep. at 25:25-26:14.)

32.     Plaintiff's pay rate at Advanced Laboratory Services is $15.00 per hour.  (Ex. 1, Plaintiff Dep. at 26:15-16.)  Plaintiff's final rate of pay at DLO was $17.80 per hour (Ex. 1, Plaintiff Dep. at 35:17-20.)

33.     Plaintiff testified that she is happy working at Advanced and that she plans to stay there and make a career of it.  (Ex. 1, Plaintiff Dep. at 28:21-25.)

34.     Plaintiff testified that she has not applied anywhere else since she started working at Advanced Laboratory Services and that she has not made any efforts to find other work.  (Ex. 1, Plaintiff Dep. at 29:1-6.)

## IV.   ARGUMENTS AND AUTHORITIES

### A.  Plaintiff's Disparate Treatment Claim Based on Race Fails as a Matter of Law.

In the First Claim for Relief in her Complaint, Plaintiff alleges discrimination on the basis of race in violation of Title VII and Section 1981.

#### 1)  Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination.

A plaintiff can prove employment discrimination by direct or circumstantial evidence. Bullington v. United Airlines, Inc., 186 F.3d 1301, 1320-21 (10th Cir. 1999). Where, as here, a plaintiff relies solely upon circumstantial evidence, the familiar McDonnell-Douglas burden-shifting formula is used to determine whether summary judgment is appropriate.  McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  In order to avoid summary judgment under McDonnell-Douglas, a plaintiff must initially meet her burden to establish a *prima facie* case of discrimination.  Id.

To meet her *prima facie* burden under a disparate treatment theory based on race, Plaintiff must show: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."   White v. Oklahoma, 552 Fed. Appx. 840, 847 (10th Cir. 2014), citing Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10t Cir. 2012).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show that her protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. White, 552 Fed. Appx. At 847, citing Khalik, 671 F.3d at 1192.

In the present case, Plaintiff's disparate treatment claims fail because Plaintiff cannot establish an element of her *prima facie* case: that she was treated less favorably than others not in the protected class.  Plaintiff has not identified any other phlebotomists whose employment did not end after participating in an altercation at work in the plain view of DLO's customers, which resulted in a four-year old who was present at a PSC in violation of DLO policy screaming in distress and the police being called.  In this instance, DLO terminated both employees (Plaintiff and Ms. Purvey) for their respective roles in the altercation.  (Undisputed Fact No. 19, 21.) Indeed, there are no other instances where police were called to DLO premises due to the conduct of an employee.  (Undisputed Fact No. 30.)

DLO anticipates that Plaintiff will argue that DLO treated Kory Claxton, a white employee, more favorably than her when they demoted him, but did not terminate his employment after it was discovered that he had substance abuse problem related to the overuse of prescription drugs.  Nevertheless:

> Not every difference in treatment, of course, will establish a discriminatory intent.   Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal.   It prohibits only intentional discrimination based upon an employee's protected class characteristics. Human relationships are inherently complex. Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably differ even among seemingly similar situations.   What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.   *Differences in treatment that are trivial or accident or explained by a non-discriminatory motive will not sustain a claim of pretext*.

Kendrick v. Penske Transp. Serv., Inc. 220 F.3d 1220, 1232 (10th Cir. 2000) (emphasis supplied).

Kory Claxton is not a similarly situated employee.   Only employees that are truly "similarly situated" to Plaintiff can be compared for the purposes of discrimination analysis. And to make such a comparison, Plaintiff bears the burden to prove that the proposed comparators were actually similarly situated to her, and that she and the proposed comparators are similarly situated in "all relevant respects."   Sepulvada v. Baker Hughes Oilfield Op., Inc., No. CIV-04699, 2005 WL 1875092, at *7 (W.D. Okla. Aug. 5, 2005) (citing Kelly v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000)); McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006) (emphasis added).   "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997). Employees of different "job levels and job responsibilities" are not similarly situated.   See Igwe v. Saint Anthony's Hosp., 804 F.Supp.2d 1183, 1192 (W.D. Okla. 2011).   While Plaintiff was a Phlebotomy Services Representative (Undisputed Fact No. 1), Mr. Claxton was a group lead.

14

(Undisputed Fact No. 3.)   As a lead, Kory Claxton performed duties over and above those assigned to ordinary Phlebotomy Services Representatives.  (Undisputed Fact No. 3.)

Moreover, similarly situated employees are those who have violated work rules of comparable seriousness.  Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005) ("work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated.")   While Mr. Claxton admitted to having a problem with misuse of his prescription pain pills, Mr. Claxton testified that he never came to work under the influence of those prescription drugs.  (Ex. 2, Claxton Dep. 72:23-73:8.)  Moreover, it was Mr. McKissick's longstanding philosophy to allow those employees who admit to having a substance abuse problem the choice of successfully completing a rehabilitation program or be terminated.  (Ex. 4, McKissick Decl. at ¶ 15.)  In accordance with that philosophy, Mr. Claxton was offered the opportunity to successfully complete a rehabilitation program or be terminated.   (Ex. 4, McKissick Decl. at ¶ 16.)   Because Mr. Claxton successfully completed the rehabilitation program, he was not terminated.[4]  (Ex. 4, McKissick Decl. at ¶ 16.)  While Plaintiff may not agree with DLO's decision to treat an employee's substance abuse issue differently than DLO's treatment of her own actions, there is a logical explanation for the difference in treatment and no evidence of discriminatory animus.  As recognized by the Tenth Circuit "A company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct."  Kendrick, 220 F.3d at 1232.  Plaintiff's conduct was of a different

---

[4] After admitting to having a substance abuse problem, Mr. Claxton was demoted from his Group Lead Phlebotomist position to the position of Phlebotomy Services Representative.  (Ex. 4, McKissick Decl. at ¶ 17.)  DLO did not reduce Mr. Claxton's pay because his rate of pay as a Group Lead Phlebotomist ($17.47 per hour) was in line with DLO's pay scale for Phlebotomy Service Representatives with Mr. Claxton's length of service with the company.  (Ex. 4, McKissick Decl. at ¶ 17.)

type than Mr. Claxton's.  Plaintiff and Mr. Claxton were not similarly situated, and DLO's treatment of Mr. Claxton's drug issue[5] does not aid Plaintiff in proving pretext.

Plaintiff cannot prove a *prima facie* case of race discrimination, and her Title VII and Section 1981 race claims should be dismissed.

> 2) Plaintiff Cannot Show Any Evidence That DLO's Decision to End the Employment Relationship Due to Plaintiff's Altercation with a Co-Worker Was a Pretext for Race Discrimination.

Even assuming Plaintiff could prove the fourth (treated less favorably than others not in the protected class) element of her *prima facie* case of discrimination based on race, Plaintiff still lacks evidence that DLO's decision to end her employment was a pretext for race discrimination. Under the burden shifting formulation of proof in employment discrimination cases, the employer is required to come forth with a legitimate non-discriminatory reason for any adverse employment action if the plaintiff establishes a *prima facie* case.  Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1279 (10th Cir. Cert denied, 528 U.S. 814 (1999)) (employer's burden is "exceedingly light").  "To satisfy this burden, 'the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude the employment decision had not been by discriminatory animus.'"  Id.  DLO has satisfied its burden by showing that Plaintiff's altercation with a co-worker, which was precipitated by Plaintiff's decision to bring her four-year old grandson to work and instruct him not to speak to Ms. Purvey, was the reason the employment relationship ended.  (Undisputed Fact No. 17-19.)  This is a legitimate nondiscriminatory reason for DLO to take an adverse employment action.  Plaintiff cannot prove

---

[5] Other courts have recognized that employers can treat alcohol and drug offenses differently than other types of work policy violations.  See, e.g., Rivera v. City and County of Denver, 365 F.3d 912 (10th Cir. 2004) (noting discipline for drug and alcohol abuse not of comparable seriousness to dishonesty in reporting work performed and in inducing other employees to provide false or misleading statements on his behalf because a different policy contemplating rehabilitation and testing governed alcohol and drug infractions); Hiatt v. Rockwell Int'l Corp.,

that this reason is pretextual and as such cannot state a claim for disparate treatment based on race.

Once the employer articulates a legitimate, nondiscriminatory reason, "the burden shifts back to the plaintiff to show there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). At all times, Plaintiff bears the burden to prove that her termination was the result of intentional discrimination based upon her race. See, e.g., Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1167 (10th Cir. 2000); Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 532 (10th Cir. 1994). [6] "In making the determination 'whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*, not as they appear to the plaintiff.'" White, 552 Fed.Appx. at 847, quoting Debord v. Mercy Health System of Kansas, Inc., 737 F.3d 642, 655 (10th Cir. 2012) (emphasis in original).

The Tenth Circuit has stated clearly that a court does not "act as a super personnel department that second guesses employers' business judgments." Kendrick, 220 F.3d at 1232, citing Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Serv., 165 F.3d 132, 1330 (10th Cir. 1999). "[M]ere conjecture" as to an employer's motives fails to prove pretext and will not defeat summary judgment. Anderson v. Coors Brewing, 181 F.3d 1171, 1179 (10th Cir. 1999). "[E]ven when … issues of motive or intent are at stake, summary judgment is proper [for the defendant] 'where the plaintiff presents no indications of motive or intent supportive of his position.'" Prizevoits v. Ind. Bell Tel. Co., 882 F.Supp. 787, 791 (S.D.

---

26 F.3d 761, 771 (7th Cir.1994) ( "[a]lcohol-related offenses are not the same type of misconduct as falsification of records").

Ind. 1995) (quoting <u>Powers v. Dole</u>, 782 F.2d 689, 694 (7th Cir. 1986); <u>see e.g.</u> <u>Swackhammer v.</u>

<u>Sprint/United Mgmt. Co</u>., 493 F.3d 1160, 1170-73 (10th Cir. 2007).

Plaintiff "lose[s] if the company honestly believed in the nondiscriminatory reasons it

offered, even if the reasons are foolish or trivial or even baseless." <u>Hartley v. Wis. Bell, Inc.</u>, 124

F.3d 887, 890 (7th Cir. 1997); <u>Johnson v. AT & T Corp.</u>, 422 F.3d 756, 762-763 (8th Cir. 2005)

(the consideration in evaluating pretext is whether the employer honestly believed the employee

violated the company's code of conduct, not whether the employer was factually correct in its

conclusion).  Under the "honest belief" doctrine:

> The relevant inquiry is not whether [the employer's] proffered reasons were wise,
> fair or correct, but whether [it] honestly believed those reasons and acted in good
> faith upon those beliefs.... In determining whether the proffered reason for a
> decision was pretextual, we examine the facts as they appear to the person
> making the decision.

<u>Rivera v. City & Cnty of Denver</u>, 365 F.3d 912, 924-925 (10th Cir. 2004) (internal quotations

omitted).  The salient issue is <u>discrimination</u>, not whether management decisions were good or

bad, right or wrong, or fair.  Plaintiff may disagree with DLO's findings regarding the cause of

(bringing her grandchild to work in violation of company policy) and her participation in (the

actual argument with Ms. Purvey) the altercation with the co-worker, but this is nothing more

than impermissibly questioning DLO's management decisions.  Indeed, Plaintiff admits that

some level of discipline was appropriate for her role in the altercation; she simply disagrees with

the level of discipline imposed.  (Undisputed Fact No. 22-24.)

Here, Plaintiff's race origin had nothing to do with her separation from employment with

DLO.   Plaintiff testified that she was never subjected to any racial comments by DLO

---

[6] Although <u>Cone</u> and other cases in this brief address age discrimination claims under the Age
Discrimination in Employment Act, "[c]ases brought under the ADEA are subject to the same
indirect method of proof used in Title VII cases alleging discriminatory treatment."  <u>Branson v.</u>

management while she was employed.  (Undisputed Fact No. 27.)  While Plaintiff was replaced by a Caucasian employee, that fact standing alone is insufficient to establish pretext.  See, e.g., Cagler v. Lockheed Martin Corp., 1998 WL 637363, No. Civ. A-97-2953 (E.D. La. Sept. 16, 1998) ("although plaintiff testified that he was replaced by a white man, this fact, standing alone, is insufficient to establish that race was the true reason for [defendant's] decision.")  Plaintiff has nothing more to offer than her own speculation and feelings that her race played a role in her termination.  (Undisputed Fact No. 25.)   Nothing about any of Plaintiff's asserted bases, including an argument that DLO painted and redecorated the Ardmore PSC after her termination, for her Title VII and Section 1981 claims against DLO evidences racial bias.  Thus, Plaintiff's racial discrimination claims under Title VII and Section 1981 fail, and summary judgment should be entered for DLO.

**B.  Plaintiff's ADEA Claim Fails as a Matter of Law.**

     1)  Plaintiff's modicum of "evidence" does not establish a triable issue of age as the "but-for" cause of her termination.

The United States Supreme Court held in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009) that regardless of whether an employee presents direct (or other) evidence that age was a motivating factor in the employer's adverse decision, the employee always retains the burden of persuasion to establish "but-for" causation, i.e., that age discrimination was, in fact, the reason for the adverse decision.  Id.  Gross elevated the quantum of causation required under the ADEA; a matter that has been consistently recognized by this Circuit's jurisprudence.   Unlike Title VII, the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.  Rather, a plaintiff

---

Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988).  Moreover, such cases are applicable to Plaintiff's ADEA claim.

in an age discrimination case must prove, by a preponderance of the evidence, that age was the

"but for" cause of the challenged adverse employment action:

> The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338. To establish a disparate-treatment claim under this plain language, **a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision**. *See Bridge v. Phoenix Bond & Indemnity Co.* [internal citation omitted].
>
> [****]
>
> We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

Id. (emphasis added).

The Tenth Circuit has often applied the Gross "but-for" standard at the summary

judgment stage.  For one example of many, in Medlock v. United Parcel Serv., Inc., 608 F.3d

1185 (10th Cir. 2010), the Tenth Circuit affirmed summary judgment granted by the district

court on an ADEA claim because the plaintiff had not met the "but-for" standard articulated in

Gross.  Id. at 1193. ("This [evidence] does not avail [the plaintiff] on his ADEA claim, for which

it is not the employer's burden to negate any possible contributory role played by age in the

challenged adverse action but, conversely, the employee's burden to show that age was the "'but-

for' cause of the action.  [Plaintiff's] testimony does not establish a triable issue of age as the

but-for cause here.")  Under Tenth Circuit and Supreme Court jurisprudence, Plaintiff has a

stringent burden of proof under the ADEA.  For the reasons set forth below, Plaintiff cannot

meet her burden and is unable to prove a *prima facie* case of discrimination under the ADEA or demonstrate that DLO's justification for her termination is untrue.

> 2) Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA.

Because Plaintiff lacks direct evidence of age discrimination under the ADEA, her discrimination and retaliation claims are properly analyzed under the familiar burden-shifting framework described in McDonnell Douglas, 411 U.S. at 802-04.  See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278 (10th Cir. 2010) (While Gross "create[s] some uncertainty regarding burden-shifting in the ADEA framework," it "does not preclude [its] continued application of McDonnell Douglas to ADEA claims."); Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1106 (10th Cir. 2008) (ADEA discrimination). Under this scheme, a plaintiff must initially establish a *prima facie* case and, if she does so, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action." Rivera, 365 F.3d at 920 (age discrimination) (internal quotation marks omitted). "Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (internal quotation marks and alteration omitted).

Plaintiff's ADEA discrimination claim fails at the *prima facie* stage of analysis.[7]

---

[7] Also of note, the decision maker, Jim McKissick, is more than ten years older than Plaintiff. (Undisputed Fact No. 4.)  While not dispositive on the issue of age discrimination, the fact that the decision maker in this case is older than Plaintiff weakens an inference of age discrimination. See, e.g. Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997) (evidence that decision maker was one year older than plaintiff supported evidence that no discrimination occurred.); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir.1991) (finding that age discrimination plaintiff faced a "difficult burden" where "all of the primary players behind his termination ... were well over age forty"). Sabin v. Amrep Inc., No. CIVA06CV02016-EWNMEH, 2007 WL 4459149, at *17, n. 8 (D. Colo. Dec. 14, 2007) ("[w]hile certainly nondispositive, the fact that the men who agreed to terminate Plaintiff were both members of Plaintiff's protected class could be said to weaken any inference of discrimination.")

To make out a *prima facie* case of age discrimination under the ADEA, Plaintiff must show that she "'(i) was within a protected age group, (ii) was doing satisfactory work, (iii) was discharged despite the adequacy of [her] work, and (iv) has some evidence the employer intended to discriminate against [her]' in reaching the decision to terminate [her]." Schrieber v. Fed. Express Corp.*, 698 F. Supp. 2d 1266, 1276 (N.D. Okla. 2010) (quoting Paup v. Gear Products, Inc.*, 327 Fed.Appx. 100 (10th Cir. 2009)).   A "plaintiff may satisfy the fourth element 'through circumstantial evidence that the plaintiff was treated less favorably than younger employees.' Schrieber, 698 F.Supp. 2d at 1276, quoting Paup, 327 Fed.Appx. at 117.   Assuming for purposes of summary judgment only that Plaintiff met the first three factors, Plaintiff cannot meet her prima facie case because she has no evidence of the fourth element.   Indeed, DLO terminated a co-worker who was under the age of forty for her involvement in the altercation.   (Undisputed Fact No. 21.)   Here, Plaintiff has presented no record evidence whatsoever that DLO intended to discriminate against her because of her age in reaching the decision to terminate her.   Plaintiff testified that no one ever said anything about her age and she "just fe[lt] that they did it because [she] is older."   (Undisputed Fact No. 26 and 28.)

3)  Plaintiff has no evidence of pretext.

The undisputed basis for the end of Plaintiff's employment was because of Plaintiff's altercation with another co-worker brought about after Plaintiff brought her grandchild to work with her, and it had nothing to do with Plaintiff's age.   DLO adopts and incorporates by reference its arguments regarding pretext located, supra, in Section (A)(2).   Unsubstantiated assertions, improbable inferences, and unsupported speculation – which is all Plaintiff has offered - are not competent summary judgment evidence.   See, e.g., Bullington, 186 F.3d at 1318; Aramburu, 112 F.3d at 1408 n. 7; Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006)

(quoting Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000)) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Moreover, the fact that Plaintiff was replaced by a younger employee (who was still in the protected age category), standing alone, is insufficient to create a triable issue of fact on the issue of pretext. See, e.g., Matiera v. JP Morgan Chase Corp., 740 F.Supp. 2d 561, 577 (S.D.N.Y. 2010); Dieck v. Suffolk County Vanderbilt Museum, 2011 WL 4434066 at 5, Case No. 09-CV-2263 (E.D.N.Y., Sept. 22, 2011) (granting summary judgment notwithstanding evidence that the plaintiff was replaced by a younger employee).

Plaintiff has nothing more than her own subjective belief (Undisputed Fact No. 26), unsupported by any facts, to support her age discrimination claim. Plaintiff cannot establish pretext. Her claims fail.

## C. **Plaintiff Failed to Reasonably Mitigate Her Damages.**

Plaintiff has no evidence of economic damages. After Plaintiff's employment with DLO ended in June 2014, she became re-employed two short weeks later at a lesser rate of pay. (Undisputed Fact No. 31-32.) However, once Plaintiff obtained that job at a lesser rate of pay, she stopped looking for work. (Undisputed Fact No. 33-34.) The undisputed facts of Plaintiff's job search establish, as a matter of law, that she failed to fulfill her duties to mitigate her damages. After she was reemployed at a lower rate of pay for lesser hours per week, she did not apply any where else. (Undisputed Fact No. 32-34) She therefore made no reasonable attempt to mitigate her damages as required by law.

A successful Title VII/ADEA claimant has a duty to exercise reasonable diligence in seeking other employment in an effort to mitigate her damages. E.E.O.C. v. Sandia Corp., 639 F.2d 600, 627 (10th Cir. 1980); Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002)

("[a] party harmed by discriminatory employment decisions has an affirmative duty to mitigate his damages by reasonably seeking and accepting other substantially equivalent employment.").

Plaintiff's lack of action is sufficient as a matter of law to show that Plaintiff failed to reasonably mitigate her damages. See Sanchez v. Mora–San Miguel Electric Co-op. Inc.,173 F.3d 864, 1999 WL 176151, at *6—*8 (10th Cir.1999) (Table) (affirming finding, as a matter of law, that plaintiff's efforts to mitigate were insufficient where she made three telephone calls to other electric cooperatives, made one telephone call to the New Mexico Highway Department, and gave her resume to the New Mexico Department of Labor to forward to Intel Corporation.); Anderson v. Graybar Elec. Co., Inc., CIV.09-251 (MJD/FLN), 2010 WL 2545508, at *13 (D. Minn. June 18, 2010) (suggesting that no action of a job search could be sufficient as a matter of law to show failure to mitigate damages).

All of these undisputed facts warrant a finding that Plaintiff has suffered no recoverable economic damages after she obtained subsequent employment.  Thus, if the Court does not dispose of this case otherwise in its ruling on this motion, it should deny Plaintiff the opportunity to recover any (or at least extremely limit) back pay for supposedly lost wages.

## CONCLUSION

WHEREFORE Defendant respectfully requests the Court hold that it is entitled to judgment as a matter of law and grant summary judgment on Plaintiff's claims.

Respectfully submitted,

s/ *Kristin M. Simpsen*
_____
Nathan L. Whatley, OBA #14601
Kristin M. Simpsen, OBA #22302
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:     (405) 235-9621
Facsimile:     (405) 235-0439
nathan.whatley@mcafeetaft.com
kristin.simpsen@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Jana B. Leonard
Shannon Haupt
LEONARD & ASSOCIATES
8265 S. Walker
Oklahoma City, OK 73139
Telephone: (405) 239-3800
Facsimile: (405) 239-3801
Email:  leonard@leonardlaw.net
          haupts@leonardlaw.net

**ATTORNEYS FOR PLAINTIFF**

s/ *Kristin M. Simpsen*
_____
Kristin M. Simpsen